UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

DAVID BATISTE,

    Plaintiff,

v.

CITY OF RICHMOND, et al.,

    Defendants.

Case No. 22-cv-01188-HSG (RMI)

**ORDER RE: DISCOVERY DISPUTE**

Re: Dkt. No. 59

    Now pending before the court is a discovery dispute that has been adequately briefed (dkt. 59); moreover, the Parties appeared for oral argument on April 11, 2023 (dkt. 62). At its core, the dispute boils down to the fact that Plaintiff (a public employee who has brought harassment and hostile work environment claims) has propounded such overly-broad and, at times irrelevant, deposition topics as to make it impossible for his public entity employer to designate and prepare any reasonable number of Rule 30(b)(6) deposition witnesses. *See generally* Ltr. Br. (dkt. 59) at 1-6. The Parties have presented their dispute in the form of twelve "subjects" (as Defendant calls them), or "topics" (in Plaintiff's verbiage) – which, essentially, constitute a series of objections by Defendant to Plaintiff's deposition notice. *See id*. at 1. For the reasons stated below, all of Defendant's objections are sustained.

    Plaintiff is an African-American man who has been employed by Defendant City of Richmond (hereafter, "City") since 2007. *See* Compl. (dkt. 1) at 2, 3. Defendant Mendoza is employed in a supervisory capacity in the City's maintenance department. *Id*. at 2. In the span of time Plaintiff has been employed by the City (nearly 17 years) he was worked in physical labor occupations in two work units – abatement and building maintenance – which have existed at

various times under the Public Works Department, the Police Department, and the Department of Infrastructure and Maintenance Operations. *See* Ltr. Br. (dkt. 59) at 1. Plaintiff alleges that from the outset of his employment, Defendant Mendoza has referred to him as "Memin." Compl. (dkt. 1) at 3. Plaintiff describes the moniker as being associated with a Mexican comic book character created in 1943, which is portrayed as "a racist caricature, depicted with monkey-like features and commonly forced to engage in derogatory and debasing acts." *Id*. Plaintiff alleges that he was referred to by this moniker "on an almost daily basis" by Defendant Mendoza and others until, in 2008, the usage had become so pervasive and casual that a number of City employees from another unit asked Plaintiff to stop tolerating such an indignity. *Id*. at 4. Plaintiff then researched the moniker on the internet, and upon learning that he was being insulted, he complained and was informed that it would be addressed appropriately. *Id*. He alleges that his supervisor – Tim Higares – failed to take reasonable steps to stop the usage of the term by various City employees and supervisors, including Defendant Mendoza. *Id*. Plaintiff continued to hear his colleagues "mumble the slur under their breath whenever [he] would walk past or behind them." *Id*.

In 2015, Defendant Mendoza was promoted to his supervisory position (with supervision responsibilities over Plaintiff), and Plaintiff alleges that he immediately "began to isolate Plaintiff and dispatched him to trash pickup, with the instruction that no one was allowed to help Plaintiff with the task." *Id*. at 5. Meanwhile, the use of the pejorative moniker persisted. *Id*. Plaintiff then filed an EEOC complaint, resulting in a finding that the use of this moniker violated the City's anti-harassment policy due to its racist nature. *Id*. Plaintiff alleges that, nevertheless, Defendant Mendoza and others persisted in referring to Plaintiff by that moniker. *Id*. In late 2017, Plaintiff was promoted to a position that mostly involved him working alone; however, he alleges that he continued hearing people referring to him by that moniker from time to time thereafter – conduct which he alleges continues to this day. *Id*.

As a result, he alleges that he has suffered extreme emotional distress, fear, terror, anxiety, humiliation, as well as a loss of his sense of security, dignity, and pride. *Id*. at 5-6. On the basis of these allegations, Plaintiff's operative complaint – as narrowed by unopposed motions to dismiss – pleads claims for harassment (pursuant to Cal Civ. Code §12900 *et. seq.*); a hostile work

2

1 environment (pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. § 2000e-2(a)); and
2 failure to take reasonable steps (pursuant to Cal. Gov't Code § 12940 *et seq.*). *See* Compl. (dkt. 1)
3 at 6-12. Notably, the lawsuit does not involve a claim for discrimination based on race, nor are
4 there any allegations of any adverse employment actions. *See* Ltr. Br. (dkt. 59) at 2, 4-5.
5 Thereafter, on March 20, 2023, Plaintiff served the City with a deposition notice (*see* dkt. 59-1),
6 directing the City to produce the individual or individuals most knowledgeable about thirteen
7 enumerated topics to appear for deposition testimony – nine of which are the subject of the dispute
8 at bar.

## DISCUSSION

10 As mentioned, the gist of this dispute is Defendant's request to strike five of Plaintiff's
11 enumerated deposition topics (Topic Nos. 1, 2, 5, 6, & 9), and to narrow or limit another four
12 (Topic Nos. 3, 4, 10, 12). *See* Ltr. Br. (dkt. 59) at 2-4. Essentially, the City contends that
13 Plaintiff's topics are not only not "painstakingly specific," but that they are so broad as to make
14 the identification of any reasonable number of witness (or their preparation) well-nigh impossible
15 (*id.*); on the other hand, referring to "painstaking" specificity, Plaintiff contends that his topics are
16 reasonably specific, and that the City is attempting to hold Plaintiff's notice (and the breadth of its
17 attendant topics) to a "phantom standard." *See id.* at 4.
18 A Rule 30(b)(6) deposition differs from the normal deposition because the 30(b)(6)
19 deposition permits a party to "name as the deponent a public or private corporation," and the
20 named corporation must then designate and prepare one or more witnesses to testify on the entity's
21 behalf. Thus, "[a] party who notices a Rule 30(b)(6) deposition should apply fairness and
22 reasonableness to the scope of the matters that the witness is required to testify about, [which
23 means that] 'the requesting party must take care to designate, with *painstaking specificity*, the
24 particular subject areas that are intended to be questioned, and that are relevant to the issues in
25 dispute.'" *Snyder v. Alight Sols. LLC*, No. 8:21-cv-00187-CJC-KES, 2022 U.S. Dist. LEXIS
26 215092, at *4 (C.D. Cal. June 23, 2022) (emphasis added) (quoting *Prokosch v. Catalina Lighting,*
27 *Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000)). The "painstaking specificity" standard described in
28 *Prokosch* has been adopted and approved by many courts in this Circuit. *See, e.g.*, *Tumbling v.*

3

*Merced Irrigation Dist.*, No. 1:08cv1801 LJO DLB, 2009 U.S. Dist. LEXIS 122468, at *4-5 (E.D. Cal. Dec. 15, 2009); *Littlefield v. NutriBullet*, L.L.C., No. CV 16-6894 MWF (SSx), 2017 U.S. Dist. LEXIS 222836, at *21 (C.D. Cal. Nov. 3, 2017); *Goodman v. Walmart Inc.*, No. 2:19-cv-01707-JCM-EJY, 2020 U.S. Dist. LEXIS 116881, at *3-5 (D. Nev. July 2, 2020); *Willy v. Sherwin-Williams Co.*, No. 3:21-cv-00054-AR, 2022 U.S. Dist. LEXIS 88454, at *7 (D. Or. May 17, 2022) ("Because Rule 30(b)(6) places substantial responsibilities and burdens on corporate designees, for the rule to function effectively, a requesting party must designate with painstaking specificity, the particular subject areas that intended to be questioned.") (internal quotation marks and citations omitted).

At bottom, while a party must make a good faith effort to prepare its 30(b)(6) witness or witnesses to "fully and un-evasively answer questions about the designated subject matter . . . that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand." *See Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK (PSG), 2012 U.S. Dist. LEXIS 9921, at *10 (N.D. Cal. Jan. 27, 2012); *see also Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task."). A deposition notice is sufficiently particular when it is relevant to the underlying claims, covers a reasonable period of time, and is narrowly tailored. *Astellas Pharma, Inc. v. Impax Labs., Inc.*, No. C 08-3466 JW (RS), 2009 U.S. Dist. LEXIS 75061, at *9 (N.D. Cal. Aug. 4, 2009). In other words, while "Rule 30(b)(6) witnesses must be prepared and knowledgeable, [] they need not be subjected to a 'memory contest.'" *Alexander v. F.B.I.*, 186 F.R.D. 137, 143 (D.D.C. 1998). In light of these authorities, the court disagrees with Plaintiff's suggestion that "painstaking specificity" is a "phantom standard."

In Topic No. 1, Plaintiff has asked the City's witness to be prepared to testify about the entirety of the City's Rule 26 disclosures. *See* Ltr. Br., Exh. A (dkt. 59-1) at 3. Given that this consists of approximately 1,500 documents, spanning 39 categories, the City asserts that this topic should be stricken because it would be impractical for any witness to be prepared to know and discuss the details of such a voluminous and broadly oriented swath of documents. *See* Ltr. Br. (dkt. 59) at 2. Plaintiff simply responds that "while not painstakingly specific" the topic is

"reasonably particular." *Id*. at 4. The court finds that this topic is not narrowly tailored; that its relevance to the underlying claims is neither apparent, nor established by Plaintiff; and that it does not appear to cover a reasonable period of time (given Plaintiff's nearly two-decade period of employment). Accordingly, the City's request to strike Topic No. 1 is **GRANTED**.

In Topic No. 2, Plaintiff has asked the City's witness to be prepared to testify about the entirety of the City's responses to Plaintiff's Requests for Production – Set One. *See* Ltr. Br., Exh. A (dkt. 59-1) at 3. The City argues that Plaintiff propounded 107 document requests on various subjects – in response to which the City produced voluminous responses and objections, while tendering 400 pages of documents. Similarly, the City contends that it would be highly impractical and unreasonably burdensome to prepare anyone to be able to testify about matters of this breadth. *See* Ltr. Br. (dkt. 59) at 2. Plaintiff's response appears convoluted – the court's best effort to make sense of it is that Plaintiff believes the scope of the topic is reasonable. *See id*. at 4. As stated above, because this request is not narrowly tailored, and because it does not appear to cover a reasonable period of time, the City's request to strike Topic No. 2 is **GRANTED**.

In Topic Nos. 3 & 4, Plaintiff has asked the City's witness to be prepared to testify about the City's policies and procedures, as well as training it has provided, pertaining to harassment, hostile work environments, and discrimination that "were or have been in place since Plaintiff's hiring." *See* Ltr. Br., Exh. A (dkt. 59-1) at 3. The City argues that these topics are excessively broad in that they seem to encompass units and departments for which Plaintiff has never worked or to which he was never been exposed. *See* Ltr. Br. (dkt. 59) at 2-3. The City adds that this lawsuit does not include a discrimination claim, nor has Plaintiff alleged that he has been harassed by any person outside of his work unit – and, therefore, the scope of these topics should be narrowed such that they would be limited to the surviving claims in Plaintiff's operative pleading and to his work units and his own supervisory chain during his employment. *Id*. at 3. Plaintiff responds that the wider "examination of training for other employees on anti-discrimination and anti-harassment policies in necessary" because other workers outside of Plaintiff's unit heard about the racist moniker and alerted Plaintiff to that fact. *Id*. at 4-5. Plaintiff's argument is unpersuasive and in no way justifies the wide scope of Topics 3 and 4, which span far beyond the

units of his employment and time frames in which his alleged harassment was experienced; and, by his own admission, "the lawsuit does not claim discrimination." *See id*. Accordingly, the City's request to narrow or limit Topics 3 and 4 to the scope of the surviving claims in the operative pleading, and to the units where Plaintiff was employed, and to Plaintiff's own supervisory chain is **GRANTED**.

Topic 5 pertains to all training provided by the City for all managers and supervisors since Plaintiff's hiring as to the handling of all employee matters concerning hiring, firing, and work assignments. *See* Ltr. Br., Exh. A (dkt. 59-1) at 3. Topic 6 ostensibly pertains to all facets of the entire course of the employment of four individuals: Plaintiff, Tim Hegares, Defendant Mendoza, and Hector Berciaga. *Id*. Topic 9 pertains to all duties, descriptions, qualifications and disqualifications for all jobs in every unit where Plaintiff works and has worked. *Id*. Because these topics are so broad as to cover vast swaths of irrelevant information; because they are not limited to any reasonable period of time; and because they are by no means narrowly tailored, the City's request to strike Topic Nos. 5, 6, and 9 is **GRANTED**.

Topic 10 pertains to the entirety of the City's employee handbook, and if not included therein, the disciplinary system, conflict mediation procedures, reporting and escalating of complaint procedures, as well as all policies related to hiring, termination and dealing with the Plaintiff's union and / or the collecting bargaining unit. *See* Ltr. Br., Exh. A (dkt. 59-1) at 3. Defendant argues that this request is overbroad in time and scope and should be limited to the employee handbook in effect during Plaintiff's employment, and also limited to the procedures for reporting and / or escalating harassment complaints. Ltr. Br. (dkt. 59) at 3. The court agrees and the City's request to so limit Topic 10 is **GRANTED.**

Topic 12 pertains to citywide investigations and findings of all City employees other than Plaintiff on complaints of harassment and hostile work environment since 2017. *See* Ltr. Br., Exh. A (dkt. 59-1) at 4. Defendant submits that this subject seeks discovery of confidential personnel information about non-parties absent any showing of a compelling need. Ltr. Br. (dkt. 59) at 3. Plaintiff responds that discovery of this wide-ranging scope "may yet reveal more." *Id*. at 5. The City submits that Topic 12 should be limited "to complaints and investigations of racial

1  harassment arising from the Public Works Department or Department of Infrastructure and
2  Maintenance Operations since 2017, but without names or identification of complainants, subjects
3  or witnesses beyond job title." *Id*. at 4. The court agrees, and the City's request to so limit Topic
4  12 is **GRANTED**.

**IT IS SO ORDERED.**

Dated: April 14, 2023

ROBERT M. ILLMAN
United States Magistrate Judge

7