Paul L. Alaga, SBN 221165
Conrad K. Wu SBN 256706
**BRYANT LAW GROUP**
885 Bryant Street, 2nd Floor
San Francisco, CA 94103
(415) 581-0885
(415) 581-0887 - fax

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BATISTE,<br><br>                        Plaintiff,<br><br>vs.<br><br>CITY OF RICHMOND, HUGO MENDOZA, and DOES 1-50,<br><br>                       Defendants.<br><br>_____ / | Case No.  22-cv-01188 AMO<br><br>**NOTICE OF OPPOSITION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANT CITY OF RICHMOND'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY AJUDICATION**<br><br>**Hearing Date: June 15, 2023<br>Time:  2:00 p.m.<br>Place:  450 Golden Gate Avenue<br>Courtroom 10 - 19th Floor<br>San Francisco, CA 94102**<br><br>**Trial Date:     March 19, 2018** |

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant City of Richmond's Motion for Summary Judgment or Partial Summary Adjudication—22-cv-01188 AMO

1

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ....................................................................................................i

3   INTRODUCTION ...............................................................................................................1

4   STATEMENT OF FACTS ....................................................................................................1

5   STANDARD OF REVIEW ...................................................................................................2

6   ARGUMENT .....................................................................................................................2

7       1.   THERE ARE GENUINE FACTUAL DISPUTES OVER WHETHER THE ALLEGED HARASSMENT WAS

8            SEVERE OR PERVASIVE AS TO ALTER PLAINTIFF'S CONDITIONS OF EMPLOYMENT...............2

9       2.   DEFENDANT HAS NOT ESTABLISHED THAT THERE IS NO GENUINE ISSUE OF MATERIAL FACT

10           REGARDING PLAINTIFF'S CLAIM THAT DEFENDANT FAILED TO PREVENT HARASSMENT.........8

11  CONCLUSION..................................................................................................................18

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant City of Richmond's Motion for Summary
Judgment or Partial Summary Adjudication—22-cv-01188 AMO

i

1

## TABLE OF AUTHORITIES

2

**Cases**

3   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .............................................................4

4   *Faragher v. City of Boca Raton,* 524 U.S. 775 ......................................................................5

5   *Martinez v. City of Los Angeles*, 141 F.3d 1373 (1999) .........................................................4

6   *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ...................4

7   *McGinest v. GTE Service Corp.* 360 F.3d 1103 ..................................................................4, 5

8   *Ribitzki v. Canmar Reading & Bates, Ltd. Partnership,* 111 F.3d 658 (9th Cir.1997).........4

9   *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406 .................................................................4

10   *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104 ...............................4

11   *Steiner v. Showboat Operating Co.* 25 F.3d 1459 ..................................................................5

12   *Steiner v. Showboat Operating Co.,* 25 F.3d 1459 .................................................................5

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant City of Richmond's Motion for Summary
Judgment or Partial Summary Adjudication—22-cv-01188 AMO

ii

**INTRODUCTION**

The Court should deny the Defendant's motion for summary judgment and partial summary adjudication for the reasons set forth below.  The facts are disputed in all relevant particulars so as to allow this matter to proceed to trial.

Plaintiff concedes Defendant's Third Argument that any causes of action cannot proceed based upon the 2016 to 2018 EEOC Charges.

**STATEMENT OF FACTS**

*Memin Pinguin* is a racist comic book created in the 1940's in Mexico. *Chiari Dec.* ¶10.  The comic depicts a young black boy with monkey-like features and depicted in debasing and demeaning scenarios. *Batiste Decl.* ¶5 & 6.  Defendant Mendoza as well as other employees at the Defendant City's Abatement Unit understood and were familiar with that comic book and the character *Memin. Dec. Chiari, Ex 1, Sacks' Report, pp 45.*

Plaintiff was first hired by Defendant City of Richmond in July of 2007 as a Maintenance Worker I in the Abatement Unit. *Batiste Decl.* ¶1.  Over the years, Plaintiff believed he developed close friendships with many of these co-workers, going to their houses, watching their children grow up and grieving with them when they suffer a loss. *Id.* at ¶2.  With a job in the City of Richmond, Plaintiff thought he can make a career of it and have an extended family in the crew of colleagues on his team. *Id.* at ¶3.  He enjoyed most working in a team setting. *Id at ¶4.*  He set the personal goal to work hard to become a manager in the Abatement Unit. *Ibid.*

From the start of his time in the Abatement Unit in 2007, Defendant Mendoza, as well as other employees in the Abatement Unit, had called Plaintiff *Memin. Dec. Chiari, Ex 1, Sacks' Report, p13; Wu Dec. ¶3, Ex. J, Mendoza Depo Tx 108:17-25.*  The name, *Memin.* was "bandied about" Plaintiff's co-workers.  *Dec. Chiari, Ex 1, Sacks' Report, pp 34, 45.*  It was a slur used to refer to Plaintiff that "floated around" the worksite, where Plaintiff's unit was housed. *Wu Dec. ¶ 11, Ex. Q, Plaintiff Depo Vol. 2 TX p. 28:7-9; Dec. Chiari, Ex. 1, Sacks' Report, pp13, 37, 44.* As time continued, more employees began to use the slur to refer to Plaintiff. *Wu Dec. para. 13, Ex. S, Plaintiff Depo Vol. 2 TX p. 62:4-63:6; dec. Chiari, Ex 1, Sacks' Report, p45.*  Defendant Mendoza used the slur; he was aware of the slur being used; he permitted the slur to be used by members of his

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant City of Richmond's Motion for Summary Judgment or Partial Summary Adjudication—22-cv-01188 AMO

1

team. *Wu Dec. ¶4, Ex. K, Mendoza Depo TX 108:17-23*. Defendant Mendoza, as well as other City employees knew the slur was not appropriate to use at work. *Dec. Chiari, Ex 1; Sacks' Report, page 45.*

The use of *Memin* to refer to Plaintiff was pervasive; in fact, even employees from another work unit overheard Plaintiff being called *Memin* by his crew. *Wu Dec. ¶ 10, Ex. P, Plaintiff Depo Vol. 1 TX p. 231:19-25*. One City employee from the "Streets" unit named George, pulled Plaintiff aside and told him not to allow them to call him that slur. *Ibid.* At that time, Plaintiff had no idea that the comic book *Memin Pinguin* existed or that the term referred to the caricature of a little black boy. *Wu Dec. ¶ 9, Ex. O, Plaintiff Depo Vol. 1 TX p. 230:9-10.* He assumed it was term was a benign nickname used by people he thought respected him. *Batista Dec. ¶6.* As a result of the conversation with George, Plaintiff went home and asked his wife what it meant, but his wife was not familiar with it. *Dec. Mendez ¶6.* Plaintiff went on the internet; what he discovered horrified him; he felt sick to his stomach, devastated and disappointed. *Dec. Mendez¶ 8.* He felt betrayed by his colleagues; the people who were his teammates for years. *Ibid.* Most of all, it was a gut punch, being so humiliated by his co-workers who had been laughing at him all along for eight years. *Dec.of Batiste ¶6.* He thought his co-workers were his friends when in fact, they thought so little of him. *Dec. Mendez ¶ 9.*

Immediately, Plaintiff complained directly to his Manager Tim Higares that he was upset Hugo Mendoza and others had been calling him this racist name for all these years. *Dec. Batiste ¶7.* Nothing was done to stop the use of the slur so, around July 1, 2015, Plaintiff reported the use of the racist slur to the Human Recourses Department. *Dec. Batiste ¶8.* In response, Human Resources Department sent Plaintiff a harassment reporting form which advised him that he could file a complaint directly with the EEOC. *Dec. Batiste ¶9.* On September 1, 2015, Plaintiff filed a complaint with the EEOC and shortly thereafter supplemented it with a summary of events. *Dec. Batiste ¶5, Ex A-H.* The complaint names his employer, Defendant City of Richmond, and Defendant Mendoza in the body of the complaint related to Mendoza's awareness that employees for the City of Richmond were using the racial term, *Memin*, when referring to Plaintiff. *Ibid.*

The complaint was investigated by Stephen Chiari of Sack Ricketts & Chase, LLP. *Dec. Chiari ¶3.* Plaintiff informed the investigator that Defendant Mendoza both used the term *Memin* and

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant City of Richmond's Motion for Summary Judgment or Partial Summary Adjudication—22-cv-01188 AMO

2

1   allowed it to be used by subordinate employees under his supervision.  The investigation made

2   findings of the same. *Dec. Chiari, Ex 1; Sacks' Report, pp. 13-14.*   A report of his investigation was

3   completed on November 24, 2015. *Dec. Chiari ¶4.*

4          Despite the requirement that the investigation prompted by Plaintiff's EEOC complaint be

5   kept confidential, someone leaked the investigation to the Abatement team. *Dec. Chiari, Ex 1, Sacks'*

6   *Report, p45.*  The investigator found that someone had prepared one of Plaintiff's coworkers for the

7   investigation interview into the use of the slur. *Dec. Chiari, Ex 1; Sacks' Report, p45.*  This coworker

8   confirmed that "employees of the Corporate Yard" were "scared" because of this investigation. *Ibid.*

9          After the fact of the investigation was leaked, only one person was willing to work with

10  Plaintiff; No one else was willing. *Wu Dec. ¶5, Ex. L, Mendoza Depo TX 109:13-25*  One coworker,

11  Rigoberto Mendoza, stopped talking with Plaintiff altogether. *Wu Dec. ¶12, Ex. R, Plaintiff Depo*

12  *Vol. 2 TX p. 51:14-15* After he learned what *Memin* meant, Plaintiff found it unbearable to work

13  alongside those people who had debased him for so many years. *Dec. Batiste, ¶11.*  He tried to

14  participate, but, at times could not. *Wu Dec. ¶7, Ex. M, Plaintiff Depo Tx 179:11-17.*

15         When the position Building and Trades Worker II was created, Plaintiff saw the writing on

16  the wall. *Dec Batiste ¶11.*  Tim Higares told Plaintiff to apply in order move him out of Abatement.

17  *Wu Dec. ¶15, Ex. U, Plaintiff Depo Vol. 1 TX p. 120:11-17; Dec. Batiste ¶11.*  Plaintiff made the

18  decision to abandon the goal of becoming manager of Abatement. *Ibid.*  He no longer had the desire

19  to stay in the Abatement unit as it has become unbearable to work in the toxic environment. *Ibid.*

20  Even after leaving Abatement, Plaintiff continued to be taunted by some members of the Abatement

21  team whenever their paths crossed such as, in the most recent incident occurring this year, Fernando

22  Chavez mumbled "*Memin*" to Plaintiff when their trucks passed each other on the street at the

23  Corporate Yard. *Dec. Batiste ¶12; Dec Mendez ¶18; Wu Dec. ¶14, Ex. T, Plaintiff Depo Vol. 1 TX p.*

24  *79:5-22.*

25         The use of *Memin* caused Plaintiff a tremendous amount of stress and anxiety.  *Dec. Batiste*

26  *¶13.*  His wife felt powerless to help him. *Dec. Mendez ¶15.*  Prior to the harassment, Plaintiff saw

27  this job as an opportunity to build a career and to provide for me and our family. He wanted to work

28  hard and get promoted through the ranks so that he could be a manager in the future. *Dec Batiste ¶4.*

Since learning of this, Plaintiff has not been the same. *Dec. Mendez, ¶10.* When they were younger, his children saw how much it impacted him. *Id at ¶ 12.* At some point, the stress and anxiety were so overwhelming that Plaintiff decided that he needed professional help and tried to work with a therapist. *Dec. Mendez ¶16.* Plaintiff continues to be stressed out and depressed by the work environment, especially if he was taunted at work, which continues to this day. *Dec. Mendez ¶18.*

The saving grace for Plaintiff is not only the support of his wife, but also the support of his father, David Batiste, Sr. *Dec. Batiste, ¶14.* For the sake of his family, Plaintiff followed his father's advice to just "push through" at work. *Dec. Batiste ¶13.* Plaintiff struggles and fights through every day, keeping all of the pain, frustration and anxiety inside until Plaintiff left work to be with his family. *Dec. Batiste ¶15.*

## STANDARD OF REVIEW

Summary judgment is not warranted if a material issue of fact exists for trial. *Ribitzki v. Canmar Reading & Bates, Ltd. Partnership,* 111 F.3d 658, 661 (9th Cir.1997). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

It is not for the court at this stage to judge the strength of this conflicting evidence; it is enough that the evidence exists and it presents a genuine issue of material fact. *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1381 (1999).

In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses. *McGinest v. GTE Service Corp.* 360 F.3d 1103, 1112 (9th Cir. 2004); *see also, e.g., Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410–11 (9th Cir 1996); *Lam,* 40 F.3d 1551, 1563 (9th Cir. 1994); *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991). "[W]hen a court too readily grants summary

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant City of Richmond's Motion for Summary Judgment or Partial Summary Adjudication—22-cv-01188 AMO

4

1   judgment, it runs the risk of providing a protective shield for discriminatory behavior that our society

2   has determined must be extirpated." *McGinest,* 360 F.3d at 1112.

3   //

### ARGUMENT

4

5   **1.     THERE ARE GENUINE FACTUAL DISPUTES OVER WHETHER THE ALLEGED**

6   **HARASSMENT WAS SEVERE OR PERVASIVE AS TO ALTER PLAINTIFF'S CONDITIONS**

7   **OF EMPLOYMENT.**

8           Plaintiff has established triable issues of facts that, if believed, would establish that the

9   conduct complained of by Mr. Batiste was sufficiently severe or pervasive as to alter the conditions

10  of his employment.  Defendant City claims that there are no triable issues of fact which render the

11  harassment sufficiently severe or pervasive as to alter the conditions of his employment.

12          Title VII prohibits an employer "to discriminate against any individual with respect to his

13  compensation, terms, conditions, or privileges of employment, because of such individual's race."

14  *McGinest,* 360 F.3d at 1112.  This encompasses the creation of a hostile work environment. *Id.*  It

15  provides an employee with the right to work in an environment free from discriminatory intimidation,

16  ridicule, and insult. *Id.* Mr. Batiste must show that there exists a genuine factual dispute as to whether

17  a "reasonable African-American man would find the workplace so objectively and subjectively

18  facially hostile as to create an abusive working environment." *Id, see also, Steiner v. Showboat*

19  *Operating Co.,* 25 F.3d 1459, 1462–63 (9th Cir.1994*); see also Faragher v. City of Boca Raton,* 524

20  U.S. 775, 787 (1998).   The harassing conduct is sufficient for liability "if such hostile conduct

21  pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her

22  work, and to desire to stay on in her position." *Id.* at 1113, quoting *Steiner v. Showboat Operating*

23  *Co.* 25 F.3d 1459, 1463 (1994).

24          The Defendant styles the use of the term *Memin* as a "nickname".  Referring to Plaintiff has a

25  little boy with monkey-like features engaging to graphic and humiliating conduct is not a

26  "nickname."  It is an extremely offensive and dehumanizing reference and should not be tolerated in

27  any workplace environment.  It should be referred to for what it is—a racial slur.  Further, Defendant

28  City minimized the use of this term as "purely verbal"—as though the use of this slur cannot cause

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant City of Richmond's Motion for Summary Judgment or Partial Summary Adjudication—22-cv-01188 AMO

5

1   pain in Plaintiff.  Verbal conduct can be extremely hurtful and painful; further, the term *Memin* is a

2   reference to a visual caricature.  The imagery is synonymous with the slur.

3          The Defendant also argues that "There is nothing overtly racial about" the name *Memin* and

4   that "there is no evidence that the stories told therein are racially derogatory." (Def. Opp. p15)   That

5   is an incredible assertion and one that no reasonable jury would agree with.  Each person who used it

6   knew exactly that *Memin* was a reference to the racist cartoon.  With minimal research, one finds it

7   explicit and deep racist meaning.

8          The fact that Plaintiff was in the dark about this is because he did not think his coworkers and

9   supervisors thought if him in that way.  When he learned of what *Memin* referred to, he understood

10  he was wrong about how he was perceived; he then understood how he was actually thought of by

11  those he worked with and worked for.  It is unfathomable that a reasonable person with any sense of

12  decency would not look at the references to *Memin* and not find them offensive and that their use at

13  work not to be hostile and abusive.

14         Defendant's suggestion that the only reasonable interpretation of the facts is that use of

15  *Memin* as part of workplace "smack talking" or "joking" is erroneous.  Jokes and "smack talking" are

16  a product of mutual understanding.  The use by one employee of cloaked racist language in which the

17  target has no understanding of its import is not a joke.

18         As a consequence of the harassment, Plaintiff's job because more difficult to perform; his

19  stress and anxiety increased.  He lost the desire to stay in the position he was in.

20         **2.      DEFENDANT HAS NOT ESTABLISHED THAT THERE IS NO GENUINE ISSUE OF**

21         **MATERIAL FACT REGARDING PLAINTIFF'S CLAIM THAT DEFENDANT FAILED TO**

22         **PREVENT HARASSMENT.**

23         Defendant correctly argues that Plaintiff must prevail on his underlying claim of harassment

24  to prevail on a claim of failing to take all reasonable steps necessary to prevent discrimination and

25  harassment from occurring.

26         Because Plaintiff's harassment claim survives Defendant's summary judgment motion, this

27  claim survives.

28  //

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant City of Richmond's Motion for Summary Judgment or Partial Summary Adjudication—22-cv-01188 AMO

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment should be denied in part and granted in part.


Dated: May 19, 2023                                             Respectfully Submitted,


                                                                /s/*Conrad Wu*
                                                                Conrad Wu
                                                                Attorneys for Plaintiff

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant City of Richmond's Motion for Summary Judgment or Partial Summary Adjudication—22-cv-01188 AMO

7