Paul L. Alaga, SBN 221165
Conrad K. Wu SBN 256706
**BRYANT LAW GROUP, LLP**
885 Bryant Street, 2nd Floor
San Francisco, CA 94103
(415) 581-0885
(415) 581-0887 - fax

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BATISTE,<br><br>             Plaintiff,<br><br>     vs.<br><br>CITY OF RICHMOND, HUGO MENDOZA, and DOES 1-50,<br><br>             Defendants.<br>_____/ | Case No.  22-cv-01188 AMO<br><br>**NOTICE OF OPPOSITION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANT MENDOZA'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE SUMMARY AJUDICATION**<br><br>**Hearing Date: June 15, 2023**<br>**Time:  2:00 p.m.**<br>**Place:  450 Golden Gate Avenue**<br>**Courtroom 10 - 19th Floor**<br>**San Francisco, CA 94102**<br><br>**Trial Date:     March 19, 2018** |

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................i

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ....................................................................................................1

STANDARD OF REVIEW ...................................................................................................2

ARGUMENT......................................................................................................................2

    1. PLAINTIFF HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES RELATED TO HIS FEHA CLAIM AGAINST DEFENDANT MENDOZA.……………..……………………………………..... 2

    2. THERE ARE GENUINE FACTUAL DISPUTES OVER WHETHER THE ALLEGED HARASSMENT WAS SEVERE OR PERVASIVE AS TO ALTER PLAINTIFF'S CONDITIONS OF EMPLOYMENT…………….8

    3. THERE ARE GENUINE FACTUAL DISPUTES OVER WHETHER THE USE OF THE TERM *MEMIN* WAS UNWELCOME BY PLAINTIFF………………………………………………………………… 10

CONCLUSION..................................................................................................................18

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

i

# TABLE OF AUTHORITIES

**Cases**

*Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406 ..................................................................................1

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ..........................................................................1

*Clark v. Superior Court* 62 Cal.App.5th 289 ...........................................................................................2

*Faragher v. City of Boca Raton,* 524 U.S. 775 .....................................................................................3

*Guzman v. NBA Automotive, Inc.* 68 Cal.App.5th 1109 .........................................................................2

*Lyle v. Warner Brothers Television Productions* 38 Cal.4th 264 ..........................................................4

*Martin v. Fisher* 11 Cal.App.4th 118 ......................................................................................................2

*Martinez v. City of Los Angeles*, 141 F.3d 1373 (1999) .......................................................................1

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ..................................1

*McGinest v. GTE Service Corp.* 360 F.3d 1103 ................................................................................1, 3

*Ribitzki v. Canmar Reading & Bates, Ltd. Partnership,* 111 F.3d 658 (9th Cir.1997) .........................1

*Steiner v. Showboat Operating Co.,* 25 F.3d 1459 ...............................................................................3

**Statutes**

California Gov. Code. § 12960 .............................................................................................................2

California Government Code § 12965 .................................................................................................2

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

ii

## INTRODUCTION

The Court should deny the Defendant's motion for summary judgment and partial summary adjudication for the reasons set forth below. The facts are disputed in all relevant particulars so as to allow this matter to proceed to trial.

Plaintiff concedes Defendant's Third Argument that any causes of action cannot proceed based upon the 2016 to 2018 EEOC Charges.

## STATEMENT OF FACTS

*Memin Pinguin* is a racist comic book created in the 1940's in Mexico. *Chiari Dec*. ¶10. The comic depicts a young black boy with monkey-like features and depicted in debasing and demeaning scenarios. *Batiste Decl.* ¶5 & 6. Defendant Mendoza as well as other employees at the Defendant City's Abatement Unit understood and were familiar with that comic book and the character *Memin. Dec. Chiari, Ex 1, Sacks' Report, pp 45*.

Plaintiff was first hired by Defendant City of Richmond in July of 2007 as a Maintenance Worker I in the Abatement Unit. *Batiste Decl.* ¶1. Over the years, Plaintiff believed he developed close friendships with many of these co-workers, going to their houses, watching their children grow up and grieving with them when they suffer a loss. *Id.* at ¶2. With a job in the City of Richmond, Plaintiff thought he can make a career of it and have an extended family in the crew of colleagues on his team. *Id.* at ¶3. He enjoyed most working in a team setting. *Id* at ¶4. He set the personal goal to work hard to become a manager in the Abatement Unit. *Ibid.*

From the start of his time in the Abatement Unit in 2007, Defendant Mendoza, as well as other employees in the Abatement Unit, had called Plaintiff *Memin. Dec. Chiari, Ex 1, Sacks' Report, p13; Wu Dec. ¶3, Ex. J, Mendoza Depo Tx 108:17-25.* The name, *Memin.* was "bandied about" Plaintiff's co-workers. *Dec. Chiari, Ex 1, Sacks' Report, pp 34, 45.* It was a slur used to refer to Plaintiff that "floated around" the worksite, where Plaintiff's unit was housed. *Wu Dec. ¶ 11, Ex. Q, Plaintiff Depo Vol. 2 TX p. 28:7-9; Dec. Chiari, Ex. 1, Sacks' Report, pp13, 37, 44.* As time continued, more employees began to use the slur to refer to Plaintiff. *Wu Dec. para. 13, Ex. S, Plaintiff Depo Vol. 2 TX p. 62:4-63:6; dec. Chiari, Ex 1, Sacks' Report, p45.* Defendant Mendoza used the slur; he was aware of the slur being used; he permitted the slur to be used by members of his

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

1

team. *Wu Dec. ¶4, Ex. K, Mendoza Depo TX 108:17-23.* Defendant Mendoza, as well as other City employees knew the slur was not appropriate to use at work. *Dec. Chiari, Ex 1; Sacks' Report, page 45.*

The use of *Memin* to refer to Plaintiff was pervasive; in fact, even employees from another work unit overheard Plaintiff being called *Memin* by his crew. *Wu Dec. ¶ 10, Ex. P, Plaintiff Depo Vol. 1 TX p. 231:19-25.* One City employee from the "Streets" unit named George, pulled Plaintiff aside and told him not to allow them to call him that slur. *Ibid.* At that time, Plaintiff had no idea that the comic book *Memin Pinguin* existed or that the term referred to the caricature of a little black boy. *Wu Dec. ¶ 9, Ex. O, Plaintiff Depo Vol. 1 TX p. 230:9-10.* He assumed it was term was a benign nickname used by people he thought respected him. *Batista Dec. ¶6.* As a result of the conversation with George, Plaintiff went home and asked his wife what it meant, but his wife was not familiar with it. *Dec. Mendez ¶6.* Plaintiff went on the internet; what he discovered horrified him; he felt sick to his stomach, devastated and disappointed. *Dec. Mendez¶ 8.* He felt betrayed by his colleagues; the people who were his teammates for years. *Ibid.* Most of all, it was a gut punch, being so humiliated by his co-workers who had been laughing at him all along for eight years. *Dec.of Batiste ¶6.* He thought his co-workers were his friends when in fact, they thought so little of him. *Dec. Mendez ¶ 9.*

Immediately, Plaintiff complained directly to his Manager Tim Higares that he was upset Hugo Mendoza and others had been calling him this racist name for all these years. *Dec. Batiste ¶7.* Nothing was done to stop the use of the slur so, around July 1, 2015, Plaintiff reported the use of the racist slur to the Human Recourses Department. *Dec. Batiste ¶8.* In response, Human Resources Department sent Plaintiff a harassment reporting form which advised him that he could file a complaint directly with the EEOC. *Dec. Batiste ¶9.* On September 1, 2015, Plaintiff filed a complaint with the EEOC and shortly thereafter supplemented it with a summary of events. *Dec. Batiste ¶5, Ex A-H.* The complaint names his employer, Defendant City of Richmond, and Defendant Mendoza in the body of the complaint related to Mendoza's awareness that employees for the City of Richmond were using the racial term, *Memin*, when referring to Plaintiff. *Ibid.*

The complaint was investigated by Stephen Chiari of Sack Ricketts & Chase, LLP. *Dec. Chiari ¶3.* Plaintiff informed the investigator that Defendant Mendoza both used the term *Memin* and

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

2

allowed it to be used by subordinate employees under his supervision.  The investigation made findings of the same. *Dec. Chiari, Ex 1; Sacks' Report, pp. 13-14.*   A report of his investigation was completed on November 24, 2015. *Dec. Chiari ¶4.*

Despite the requirement that the investigation prompted by Plaintiff's EEOC complaint be kept confidential, someone leaked the investigation to the Abatement team. *Dec. Chiari, Ex 1, Sacks' Report, p45.*  The investigator found that someone had prepared one of Plaintiff's coworkers for the investigation interview into the use of the slur. *Dec. Chiari, Ex 1; Sacks' Report, p45.*  This coworker confirmed that "employees of the Corporate Yard" were "scared" because of this investigation. *Ibid.*

After the fact of the investigation was leaked, only one person was willing to work with Plaintiff; No one else was willing. *Wu Dec. ¶5, Ex. L, Mendoza Depo TX 109:13-25*  One coworker, Rigoberto Mendoza, stopped talking with Plaintiff altogether. *Wu Dec. ¶12, Ex. R, Plaintiff Depo Vol. 2 TX p. 51:14-15* After he learned what *Memin* meant, Plaintiff found it unbearable to work alongside those people who had debased him for so many years. *Dec. Batiste, ¶11.*  He tried to participate, but, at times could not. *Wu Dec. ¶7, Ex. M, Plaintiff Depo Tx 179:11-17.*

When the position Building and Trades Worker II was created, Plaintiff saw the writing on the wall. *Dec Batiste ¶11.*  Tim Higares told Plaintiff to apply in order move him out of Abatement. *Wu Dec. ¶15, Ex. U, Plaintiff Depo Vol. 1 TX p. 120:11-17; Dec. Batiste ¶11.*  Plaintiff made the decision to abandon the goal of becoming manager of Abatement. *Ibid.*  He no longer had the desire to stay in the Abatement unit as it has become unbearable to work in the toxic environment. *Ibid.* Even after leaving Abatement, Plaintiff continued to be taunted by some members of the Abatement team whenever their paths crossed such as, in the most recent incident occurring this year, Fernando Chavez mumbled "*Memin*" to Plaintiff when their trucks passed each other on the street at the Corporate Yard. *Dec. Batiste ¶12; Dec Mendez ¶18; Wu Dec. ¶14, Ex. T, Plaintiff Depo Vol. 1 TX p. 79:5-22.*

The use of *Memin* caused Plaintiff a tremendous amount of stress and anxiety.  *Dec. Batiste ¶13.*  His wife felt powerless to help him. *Dec. Mendez ¶15.*  Prior to the harassment, Plaintiff saw this job as an opportunity to build a career and to provide for me and our family. He wanted to work hard and get promoted through the ranks so that he could be a manager in the future. *Dec Batiste ¶4.*

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

3

Since learning of this, Plaintiff has not been the same. *Dec. Mendez, ¶10.* When they were younger, his children saw how much it impacted him. *Id at ¶ 12.* At some point, the stress and anxiety were so overwhelming that Plaintiff decided that he needed professional help and tried to work with a therapist. *Dec. Mendez ¶16.* Plaintiff continues to be stressed out and depressed by the work environment, especially if he was taunted at work, which continues to this day. *Dec. Mendez ¶18.*

The saving grace for Plaintiff is not only the support of his wife, but also the support of his father, David Batiste, Sr. *Dec. Batiste, ¶14.* For the sake of his family, Plaintiff followed his father's advice to just "push through" at work. *Dec. Batiste ¶13.* Plaintiff struggles and fights through every day, keeping all of the pain, frustration and anxiety inside until Plaintiff left work to be with his family. *Dec. Batiste ¶15.*

**STANDARD OF REVIEW**

Summary judgment is not warranted if a material issue of fact exists for trial. *Ribitzki v. Canmar Reading & Bates, Ltd. Partnership,* 111 F.3d 658, 661 (9th Cir.1997). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) . "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) .

It is not for the court at this stage to judge the strength of this conflicting evidence; it is enough that the evidence exists and it presents a genuine issue of material fact. *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1381 (1999).

In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses. *McGinest v. GTE Service Corp.* 360 F.3d 1103, 1112 (9th Cir. 2004); *see also, e.g., Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410–11 (9th Cir 1996); *Lam,* 40 F.3d 1551, 1563 (9th Cir. 1994); *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991). "[W]hen a court too readily grants summary

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

4

judgment, it runs the risk of providing a protective shield for discriminatory behavior that our society has determined must be extirpated." *McGinest,* 360 F.3d at 1112.

## ARGUMENT

### 1. PLAINTIFF HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES RELATED TO HIS FEHA CLAIM AGAINST DEFENDANT MENDOZA.

Plaintiff agrees with Defendant that prior to bringing a FEHA claim against an individual, he must file a complaint with the California Department of Fair Employment and Housing (DFEH)[1] and obtain from the DFEH a notice of right to sue. California Gov. Code. §§ 12960, 12965. *Pollick v. Tri-Modal Distribution Services, Inc.* 11 Cal.5th 918, 931 (2021). This exhaustion requirement is satisfied if the claims in a complaint are "like and reasonably related to those in the DFEH complaint or likely to be uncovered in the course of a DFEH investigation." *Clark v. Superior Court* 62 Cal.App.5th 289, 301 (2021) (internal citations and quotations omitted); *see also, Guzman v. NBA Automotive, Inc.* 68 Cal.App.5th 1109, 1118 (2021). The function of the DFEH complaint is to provide a basis for an investigation and not as a limiting device. *Clark, supra* at 306.

In *Clark, supra*, the court allowed a suit to proceed even though the DFEH complainant did not name the ALSC as an intended respondent. The Court reasoned that "because any administrative investigation into Clark's DFEH Complaint would have revealed ALSC as an intended respondent, Clark's DFEH Complaint also fully served the purpose of the FEHA administrative exhaustion doctrine, i.e., to give the administrative agency an opportunity to investigate and conciliate the claim." *Id*. Suites against unnamed parties are allowed if their involvement is "likely to have been revealed in the [administrative] investigation which could reasonably have been expected to grow out of the charge." *Martin v. Fisher* 11 Cal.App.4th 118, 121-123 (1992). In like fashion, judicial action is not limited to the caption of the administrative which, which is reflected in the right-to-sue letter. *Martin, supra* at 123. "[A]ny administrative investigation into Clark's DFEH Complaint would have certainly identified ALSC as an intended respondent, particularly since DFEH is mandated to "liberally construe all complaints to effectuate the purpose of the laws the department enforces ....

---

[1] The DFEH is now named the California Civil Rights Division.

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

5

(Cal. Code Regs, tit. 2, § 10003; accord, *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 268, 100 Cal.Rptr.3d 296 ["what is submitted to the DFEH must not only be construed liberally in favor of plaintiff, it must be construed in light of what might be uncovered by a reasonable investigation"].)" *Clark, supra* at 306.

In this case, Plaintiff filed a complaint with the DFEH which named his supervisor, Defendant Mendoza, in the body of the complaint related to his awareness that employees for the City of Richmond were using the racial term, *Memin*, when referring to Plaintiff. Plaintiff informed the investigator that Defendant Mendoza both *used* the term *Memin* and allowed it to be by subordinate employees under his supervision. The investigation made findings of the same. Further, Defendant Mendoza was notified by the findings of the investigation. Defendant was further verbally reprimanded by his employer for the conduct complained of in this action. The DFEH complained served the purpose of the FEHA administrative exhaustion doctrine. *See Clark, supra* at 306.

As such, Plaintiff has exhausted the administrative remedies and his complaint against Defendant Mendoza can proceed.

    **2.**    **THERE ARE GENUINE FACTUAL DISPUTES OVER WHETHER THE ALLEGED HARASSMENT WAS SEVERE OR PERVASIVE AS TO ALTER PLAINTIFF'S CONDITIONS OF EMPLOYMENT.**

Plaintiff has established triable issues of facts that, if believed, would establish that the conduct complained of by Mr. Batiste was sufficiently severe or pervasive as to alter the conditions of his employment.

Title VII prohibits an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." *McGinest,* 360 F.3d at 1112. This encompasses the creation of a hostile work environment. *Id.* It provides an employee with the right to work in an environment free from discriminatory intimidation, ridicule, and insult. *Id.* Mr. Batiste must show that there exists a genuine factual dispute as to whether a "reasonable African-American man would find the workplace so objectively and subjectively facially hostile as to create an abusive working environment." *Id, see also, Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1462–63 (9th Cir.1994*); see also Faragher v. City of Boca Raton,*

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

6

524 U.S. 775, 787 (1998). The harassing conduct is sufficient for liability "if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Id.* at 1113, quoting *Steiner v. Showboat Operating Co.* 25 F.3d 1459, 1463 (1994).

There exist genuine issues of material facts surrounding whether or not the use of the term by *Memin* was severe and pervasive. The evidence set forth in this motion establishes that there is a factual dispute over this issue. A reasonable African-American would find the use of the slur by Mendoza and his allowance, as a supervisor, of the slur to find the conduct severe and pervasive. The term was used all throughout Plaintiff's employment. Defendant Mendoza used that term—in concert with other employees—to refer to Plaintiff. That fact that the language was coded does not render the conduct not severe or pervasive. Further, there are disputed facts which establish that the conduct continued even after Plaintiff made a formal complaint with the EEOC.

The use of the term was used during his entire employment with Defendant City—that is pervasive. The use of the

### 3. THERE ARE GENUINE FACTUAL DISPUTES OVER WHETHER THE USE OF THE TERM *MEMIN* WAS UNWELCOME BY PLAINTIFF.

Plaintiff agrees that the conduct complained of must be both objectively and subjectively offense. *Lyle v. Warner Brothers Television Productions* 38 Cal.4th 264, 284 (2006). The evidence establish that the use of the racist term *Memin* to refer to Plaintiff was both objectively and subjectively offensive.

Defendant casts the interaction between Defendants as "mutual banter" and that because Plaintiff did not appreciate the racist import of the term *Memin*, there is no liability on the part of Defendant for his use of that term. Each of the cases cited by Defendant are inapposite to the facts of this case. Those cases involved both parties knowing exactly what the meaning and import of words being used. That is not the case here. This was not mutual banter wherein each party understood the meaning of the words being used. The reference to Defendant Mendoza as the handsome and famous singer "Ricky Martin" is in no way analogous to the reference to Plaintiff as the abused black boy depicted with monkey-like features and placed in debasing scenarios. The be clear, the fact that

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

7

1  Plaintiff used "Ricky Martin" demonstrates his lack of appreciation for the insults being levied
2  against him.
3     Defendants cannot shield himself from liability from engaging in racist and offensive conduct
4  by doing so under a cloak of coded language.  It is clear from the record, that as soon as Plaintiff
5  learned of the meaning of the term *Memin* he was hurt, humiliated, and traumatized. The prior several
6  years at his job had been now tainted. At that point, he understood that Defendant and his other
7  coworkers had been mocking and laughing at him for the prior eight years.  The use of a racist and
8  belittling moniker was never welcome by Plaintiff.  As soon as he learned of its origin, he
9  immediately complained to his other supervisor, Tim Higaras and then to the EEOC.
10    Plaintiff did not consent to the use of the racist slur *Memin*—as he had no idea what that slur
11  referred to.  He was misled by his coworkers and Defendant Mendoza that the term was simply a
12  nickname—not a reference to a little boy with monkey-like features depicted engaging in graphic and
13  debasing acts.  There is absolutely no scenario wherein Plaintiff would "welcome" being referred to
14  that character.
15    Defendant's motion should thus be denied.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment should be denied.

Dated: May 19, 2023                                    Respectfully Submitted,


                                                       /s/*Conrad Wu*
                                                       Conrad Wu
                                                       Attorneys for Plaintiff

Notice of Opposition and Point and Authorities in Support of Opposition to Defendant Mendoza's Motion for Summary Judgment or, In the Alternative Summary Adjudication—22-cv-01188 AMO

8