UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BATISTE,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF RICHMOND, et al.,<br><br>    Defendants. | Case No. 22-cv-01188-AMO<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT CITY OF RICHMOND'S MOTION FOR SUMMARY JUDGMENT & DENYING DEFENDANT MENDOZA'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 69, 70 |

Pending before the Court are Defendant City of Richmond's ("Richmond") and Defendant Hugo Mendoza's ("Mendoza") (collectively, "Defendants") motions for summary judgment. The Court heard argument on the motions on June 15, 2023. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **DENIES** Defendant Mendoza's motion for summary judgment and **GRANTS IN PART AND DENIES IN PART** Defendant Richmond's motion for summary judgment, for the reasons stated below.

## I.    BACKGROUND

Plaintiff David Batiste filed this employment discrimination action against Defendants on February 25, 2022. ECF 1 (Complaint).[1] Batiste is a Black man and a current employee of Defendant City of Richmond who began working for the city in 2007 as a Maintenance Worker I in the Abatement Team. ECF 80 (Batiste Decl.) ¶ 1; ECF 69-2, Ex. D (Admin. Charge) at 101.[2]

---

[1] The Court relies on undisputed facts and construes any disputed facts in the light most favorable to Batiste, as the non-moving party. *See Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017).

[2] Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1

Defendant Hugo Mendoza worked as a Maintenance Worker II in the same unit. ECF 69-2, Ex. A (Batiste Dep. I)[3] at 10; *id.*, Ex. C (Mendoza Dep.) at 83-84. In the early days of Batiste's employment, Mendoza would receive work assignments from his supervisor Terrance Johnson and assign them to other crew members, including Batiste. Batiste Dep. I at 10-11. Mendoza became acting supervisor in 2009 and permanently obtained the supervisor position in 2013. Mendoza Dep. at 84.

Starting in 2007, when Batiste began working for Richmond, his coworkers referred to him as "Memín." Batiste Decl. ¶ 5. "Memín" is the name of a Mexican comic book character who is a Black boy "drawn to look like a monkey." Batiste Decl. ¶ 5; *see* ECF 69-2, Ex. B (Batiste Dep. II) at 52-54; Admin. Charge at 101. For many years, Batiste did not understand the association of this nickname. Batiste Dep. II at 52-53. Throughout the course of Batiste's employment, Mendoza and Batiste had a "good relationship," and the two men would engage in friendly banter. Batiste Dep. I at 32; Mendoza Dep. at 95. Mendoza referred to Batiste as "Memín" or "Pelón," which Mendoza understands to be Spanish for "bald man." ECF 69-1 (Mendoza Decl.) ¶ 3. Batiste called Mendoza "Ricky Martin" or "the F-word" or "FU." Batiste Dep. II at 47. The two used these names in a joking manner, Batiste Dep. I at 34-36, and Mendoza did not know the connotations of the nickname "Memín." Mendoza Dep. at 5-6. Batiste's other coworkers, Rigo Mendoza, Hector Burciaga, and Fernando Chavez each used the nickname to refer to him on a few occasions. ECF 70-11 (Batiste Dep. III) at 39-44; ECF 82 (Batiste Dep. IV) at 13, 18; Mendoza Dep. at 6.

Sometime around August 10, 2015, a coworker in a different unit commented to Batiste that he should not let his coworkers call him that nickname. Batiste Dep. I at 38-39, 50-53. Prompted by this coworker's remark, Batiste searched the internet and discovered that "Memín" is a "racist cartoon depicting Black people as monkeys." Admin. Charge at 101; *see* Batiste Decl. ¶

---

[3] The parties submit excerpts from two days of Batiste's deposition. For ease of distinguishing the evidence submitted, the excerpts submitted as ECF 69-2, Exhibit A, will be called "Batiste Deposition I," the excerpts submitted as ECF 69-2, Exhibit B, will be called "Batiste Deposition II," the excerpts submitted as ECF 70-11 will be called "Batiste Deposition III," and the excerpts submitted as ECF 82, Exhibit B, will be called "Batiste Deposition IV."

5; Batiste Dep. II at 52-54.  This was the first time Batiste associated the "Memín" nickname with the comic book character.  Batiste Dep. II at 53.  He felt humiliated.  Batiste Decl. ¶ 6.

Subsequently, on an unspecified date around August of 2015, Batiste complained to his manager, Tim Higares,[4] about his coworkers' use of this nickname.  Batiste Decl. ¶¶ 7-8; *see* Batiste Dep. II at 53.  Shortly thereafter, Batiste complained to Richmond's Human Resources Department, which advised him that he could file a complaint directly with the EEOC.  Batiste Decl. ¶¶ 8-9.  On August 25, 2015, Batiste filed a complaint with the EEOC alleging that his coworkers referred to him as "Memín" and that Mendoza witnessed the incidents but did not take any action.  Admin. Charge at 101.

Richmond hired an outside investigator in September of 2015 to investigate the EEOC charges, which included allegations beyond the scope of the current action.  ECF 70-1 (Chiari Decl.) ¶¶ 3-6.  During the investigation, Batiste identified his coworkers Hector Burciaga and Hugo Mendoza as the individuals who used this nickname.  Chiari Decl. ¶ 8.  As a result of the investigation, Richmond implemented three remedial measures.  ECF 70-6 (Higares Decl.) ¶¶ 8-9.  First, Hector Burciaga and Hugo Mendoza received verbal warnings that the use of the nickname "Memín" was inappropriate and could not continue.  *Id.* ¶ 9.  Second, the Abatement Unit received an informal training on respectful communications.  *Id.*  Third, the Abatement staff were required to participate in Richmond's formal two-hour anti-harassment training.  *Id.*

Following the investigation, Batiste did not report any further incidents of his coworkers using the nickname.  Higares Decl. ¶ 10; ECF 70-3 (Lindsay Decl.) ¶ 7.  Mendoza did not call Batiste "Memín" after 2015.  Mendoza Decl. ¶ 5; Batiste Dep. II at 48.  Since the investigation, there has been one incident of a coworker referring to Batiste by this nickname, an incident Batiste did not report to Richmond.  In 2023, Batiste saw a coworker, Fernando Chavez, mouth "Memín" to him through a car window as he drove past.  Batiste Dep. II at 48; Batiste Dep. III at 39.

On February 25, 2022, Batiste filed the instant action, alleging seven causes of action for racial harassment based on his colleagues' use of the nickname "Memín."  ECF 1.  Following

---

[4] The Court dismissed Higares from the lawsuit after considering Defendants' unopposed motions to dismiss.  ECF 48.

3

unopposed motions to dismiss, three causes of action remain: (1) racial harassment against the City of Richmond and Hugo Mendoza under the California Fair Employment and Housing Act ("FEHA"); (2) racial harassment against Richmond under Title VII; and (3) failure to take reasonable steps to prevent harassment against Richmond under FEHA.  The motions at bar, for summary judgment on all causes of action against each defendant, were filed on May 4th and 5th, 2023.  ECF 69, 70.

## II. LEGAL STANDARD

Summary judgment shall be granted if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  "Material facts" are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a "reasonable jury" to return a verdict for the nonmoving party.  *Id.*  The court "may not weigh the evidence or make credibility determinations." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  "To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011).

"A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-23 (1986).  Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or

4

defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. Even if the moving party does not bear the ultimate burden of persuasion at trial, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Id.* at 1105.

Where the moving party carries its initial burden of production, the nonmoving party must then produce evidence to support its claim. *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). If a nonmoving party fails to produce evidence that supports its claim or defense, courts should enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 322-23.

**III.     DISCUSSION**

In addition to the motions for summary judgement, Defendants submitted objections to some of Batiste's evidence in opposition to their motions. To ensure that the Court considers only admissible evidence to determine whether Defendants have met their summary judgment burden, *see Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002), the Court first resolves Defendants' evidentiary objections.

**A.     Evidentiary Objections**

Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." As noted above, a district court may only consider admissible evidence in ruling on a motion for summary judgment. *Orr*, 285 F.3d at 773. To be admissible, evidence must be authenticated. *Id*. The authentication of a document requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* (quoting Fed. R. Evid. 901(a)).

The Ninth Circuit has held post-*Orr* that "[a]t the summary judgment stage, we do not

1    focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its

2    contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (citations omitted).

3    "Evidence may be offered to support or dispute a fact on summary judgment only if it could be

4    presented in an admissible form at trial." *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 925-

5    26 (9th Cir. 2014) (internal quotation marks and citation omitted).

### 1.     Ana Mendez Declaration

Mendoza objects to the declaration submitted by Ana Mendez, Batiste's wife, in opposition to the motion for summary judgment.  ECF 86-1 (Evidentiary Objections) at 2. Specifically, he objects to two statements as speculative, and lacking foundation or personal knowledge about Batiste's treatment at work.  *Id.* at 2 (citing ECF 84 (Mendez Declaration) ¶ 15 ("David [Batiste] would be taunted at work but I felt powerless to help him"); *id.* ¶ 18 ("David continues to be stressed out and depressed by the work environment, especially if he was taunted at work, which continues to this day").  Richmond objects to the same statements as well as additional statements in the declaration as lacking personal knowledge and as inadmissible hearsay.  ECF 87 (Richmond Reply) at 7 (citing Mendez Decl. ¶¶ 7-10, 12, 15, 18).  The statements in Mendez's declaration describe how Batiste felt after learning about the meaning of "Memín," how the couple's children felt, and Batiste's experiences at work.  Mendez Decl. ¶¶ 8-9, 12, 15, 18.  However, Mendez does not state a basis for her personal knowledge of these facts. Declarations made in support of a motion for summary judgment must be (1) based on personal knowledge, (2) set out facts that would be admissible, and (3) show that the declarant is competent to testify.  Fed. R. Civ. P. 56(c)(4).  Because Mendez fails to set forth her basis for personal knowledge for these statements, the objections are sustained.

### 2.     David Batiste Declaration and Exhibits

Richmond objects to certain statements in Batiste's declaration as inadmissible hearsay. ECF 87 (Richmond Reply) at 7 (citing Batiste Decl. ¶¶ 6, 10, 13, 14).  In his declaration, Batiste states that he felt "humiliated" seeing the comic book character depicted in a "debasing, demeaning, and racist manner."  Batiste Decl. ¶ 6.  Richmond objects that Batiste has not established a foundation for his personal knowledge of the comic book content, but Batiste's

declaration explains that he found the comic book character when he searched on the internet. *Id.* ¶ 5. Accordingly, the Court overrules the objection to the statement in paragraph 6 of Batiste's declaration. *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) (finding admissible a diary which contained "mere recitations of events within [plaintiff's] personal knowledge"). Richmond also objects that Batiste's statements about his father's advice and support contain inadmissible hearsay. Richmond Reply at 7 (citing Batiste Decl. ¶¶ 10, 13, 14). As the Court does not rely on these statements, it denies Richmond's objections as moot.

Richmond further objects to the exhibits submitted with Batiste's declaration: a video and pictures of the "*Memín Pinguín*" cartoon. Richmond Reply at 6-7 (citing Batiste Decl. ¶ 5, Ex. A-B). Richmond challenges these exhibits as inadmissible hearsay and not authenticated, arguing that Batiste has not established his personal knowledge of them. *Id.*; *see S. California Darts Ass'n*, 762 F.3d at 925-26 (Rule 56 requires evidence that would be admissible at trial). Richmond also objects to the use of the video (Ex. B) and certain pictures (Ex. A at 9-11) because they were not produced with Batiste's initial or supplemental disclosures as required under Federal Rule of Civil Procedure 37(c)(1). Richmond Reply at 6-7. Federal Rule of Civil Procedure 37 holds that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Batiste fails to address his failure to disclose those images or the video. *See* ECF 92. Accordingly, the Court sustains Richmond's objections as to those images and the video.

As to the remaining images, however, Richmond does not explain the basis for the hearsay objections, so the Court is "largely reduced to guessing at the arguments underlying them." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir.), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021). Though that would be basis alone for overruling the objections, the court denies them as moot, because the Court does not rely on the pictures in reaching its decision.

**B.     Analysis**

Having resolved the evidentiary matters, the Court turns to the merits of Defendants'

7

1  motions for summary judgment on Batiste's remaining claims.  Batiste brings his race harassment
2  claim based on one theory: that he was subjected to a hostile work environment because for years,
3  his coworkers referred to him by the nickname "Memín" that he later learned has negative,
4  stereotypical racial connotations.  Compl. ¶¶ 22-33, 52-85.

5  To establish a prima facie case of hostile work environment based on race under Title VII,
6  a plaintiff must show: (1) he was subjected to verbal or physical conduct of a harassing nature; (2)
7  the conduct was unwelcome; and (3) the conduct was "sufficiently severe or pervasive to alter the
8  conditions of the victim's employment and create an abusive work environment." *Arizona ex rel.*
9  *Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016) (citation omitted); *Fisher v. San*
10 *Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 606, 608-09 (1989) (adopting same standard for
11 harassment claims under FEHA).  The defendants' conduct must be both objectively and
12 subjectively offensive.  *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995); *Lyle v.*
13 *Warner Bros. Television Prods.*, 38 Cal. 4th 264, 284 (2006).  Whether a workplace is objectively
14 hostile is determined from the perspective of a "reasonable person with the same fundamental
15 characteristics."  *Fuller*, 47 F.3d at 1527.  The workplace must be one that "a reasonable person
16 would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher v.*
17 *City of Boca Raton*, 524 U.S. 775, 787 (1998).

18 In assessing whether an environment is hostile or abusive, courts consider "'all the
19 circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is
20 physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably
21 interferes with an employee's work performance.'"  *Kortan v. California Youth Auth.*, 217 F.3d
22 1104, 1110 (9th Cir. 2000) (quoting *Faragher*, 524 U.S. at 787-88).  "The required level of
23 severity or seriousness varies inversely with the pervasiveness or frequency of the conduct."
24 *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 687 (9th Cir. 2017) (quoting *Nichols v. Azteca*
25 *Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)).  "[S]imple teasing, offhand comments, and
26 isolated incidents" alone cannot create a hostile work environment.  *Id.* (citation omitted).  Rather,
27 "[r]epeated derogatory or humiliating statements . . . can constitute a hostile work environment."
28 *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004) (quoting *Ray v.*

*Henderson,* 217 F.3d 1234, 1245 (9th Cir. 2000)); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986) (citations omitted) (the "mere utterance of an . . . epithet which engenders offensive feelings in an employee" does not alter the employee's terms and conditions of employment sufficiently to create a hostile work environment, but such an environment may exist when the workplace is permeated with "discriminatory intimidation, ridicule, and insult").

An employer's liability for harassing conduct depends on whether the harasser is a supervisor or a coworker. *McGinest*, 360 F.3d at 1119. "An employer is vicariously liable for a hostile environment created by a supervisor, although such liability is subject to an affirmative defense." *Id.* "If, however, the harasser is merely a coworker, the plaintiff must prove that . . . the employer knew or should have known of the harassment but did not take adequate steps to address it." *Id.* (quoting *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001)); *see also Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021) ("it is well established that an employer can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third party's sexual harassment or racial discrimination the employer knew or should have known about").

The Court first considers Richmond's motion for summary judgment on Batiste's claim for hostile work environment, and then turns to Mendoza's.

### 1. Richmond's Motion for Summary Judgment

Richmond argues that it is entitled to summary judgment on the grounds that Batiste cannot show he was subjected to severe or pervasive conduct which altered the terms and conditions of his employment. ECF 70 (Richmond Mot.) at 5. Richmond further asserts that summary judgment should be granted on Batiste's FEHA failure to prevent harassment claim because it is premised on his success in the harassment claim. *Id.* The Court considers each argument in turn.

#### a. Severe or Pervasive Harassment

Richmond asserts that the conduct directed at Batiste was not sufficiently severe or pervasive to constitute a hostile work environment. Richmond Mot at 14-17; Richmond Reply at 4-6. Examining the record in the light most favorable to Batiste, the Court concludes that there is

1   a genuine dispute of material fact as to the severity and pervasiveness of the conduct.

2         Richmond argues that Batiste provides "inconsistent and non-specific accounts" of how
3   often he was subjected to the nickname. Richmond Mot. at 17. For his part, Mendoza avers that
4   he only called Batiste by the name "Memín" on one occasion, and that he did not know what the
5   nickname meant. Mendoza Dep. at 90-91. However, Batiste testified that Mendoza – his
6   supervisor – referred to him as "Memín" a "few times" (Batiste Dep. I at 33), "frequently" (Batiste
7   Dep. III at 5), and "daily" (*id.* at 3, 7). Additionally, Batiste adds that his coworkers used the
8   nickname a handful of times throughout his employment. *See* Batiste Dep. III at 19, 39-44
9   (Fernando Chavez used the nickname three times); Batiste Dep. IV at 18 (Rigo Mendoza used the
10  nickname on two occasions); Mendoza Dep. at 91, Batiste Dep. I at 38 (Hector Burciaga used the
11  nickname). This is the epitome of a factual dispute about the pervasiveness of the conduct to
12  which Batiste was subjected. Thus, the Court denies Richmond's motion for summary judgment
13  on Batiste's FEHA and Title VII claims.

14        Richmond also moves for partial summary judgment of the first and second causes of
15  action for harassment to the extent that they are based on conduct in Batiste's post-2015 EEOC
16  charges. Richmond Mot. at 5, 17-19. Batiste has conceded that these additional claims are time-
17  barred. ECF 78 (Batiste Response) at 4. Thus, the Court grants partial summary judgment as to
18  these events and allegations.

19        **b.**    **Failure to Prevent Harassment**

20  Richmond argues that the failure to prevent harassment claim must fail because Batiste has
21  not established his harassment claim. Richmond Mot. at 19. It is an unlawful employment
22  practice under FEHA "for an employer . . . to fail to take all reasonable steps necessary to prevent
23  discrimination and harassment from occurring" in the workplace. Cal. Gov't Code § 12940(k). A
24  plaintiff alleging a claim for failure to prevent harassment must show that (1) he was subjected to
25  discrimination or harassment in the course of employment; (2) the defendant failed to take all
26  reasonable steps to prevent harassment; (3) the plaintiff was harmed; and (4) the failure to take
27  reasonable steps was a substantial factor in causing the plaintiff's harm. California Civil Jury
28  Instructions CACI No. 2527; *see Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1314

United States District Court
Northern District of California

1    (2015), *as modified on denial of reh'g* (Mar. 24, 2015) (finding that a plaintiff must first show

2    actual discrimination or harassment under FEHA to prevail under section 12940(k)).

3          Because the Court concludes above that there is a genuine issue of material fact with

4    respect to the severity and pervasiveness of harassment, Richmond's motion for summary

5    judgment must also be denied as to the claim for failure to prevent harassment.

### 2.   Mendoza's Motion for Summary Judgment

7          Mendoza separately moves for summary judgment, arguing that (1) the Court lacks

8    jurisdiction to hear the FEHA claim against Mendoza because Batiste failed to exhaust his

9    administrative remedies against Mendoza; (2) Batiste welcomed all alleged harassing conduct; and

10   (3) the alleged harassment was not severe or pervasive. ECF 69 (Mendoza Mot.) at 2. As

11   explained above, in Section B(1)(a), the Court concludes that there is an issue of material fact

12   regarding whether the conduct was severe or pervasive – it does not address that argument again.

13   The Court first considers the jurisdictional question of administrative exhaustion before turning to

14   Mendoza's contention that the conduct was welcomed.

### a.   Administrative Exhaustion

16         "In order to bring a civil action under FEHA, the aggrieved person must exhaust the

17   administrative remedies provided by law." *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th

18   Cir. 2001) (quoting *Yurick v. Superior Court,* 209 Cal. App. 3d 1116, 1121 (1989)); *Pollock v. Tri-*

19   *Modal Distribution Servs., Inc.*, 11 Cal. 5th 918, 931 (2021) (same). "Exhaustion in this context

20   requires filing a written charge with DFEH [the California Department of Fair Employment and

21   Housing][5] within one year of the alleged unlawful employment discrimination, and obtaining

22   notice from DFEH of the right to sue." *Rodriguez*, 265 F.3d at 896. "The administrative

23   exhaustion requirement is satisfied if FEHA claims in a judicial complaint are 'like and reasonably

24   related to' those in the DFEH complaint . . . or 'likely to be uncovered in the course of a DFEH

25   investigation.'" *Clark v. Superior Ct.*, 62 Cal. App. 5th 289, 301 (2021) (citations and internal

26   quotation marks omitted). FEHA's procedural requirements are to be "construed liberally" to

---

[5] The DFEH is now named the California Civil Rights Division.

11

accomplish the purposes of FEHA including "the elimination of employment discrimination." *Rodriguez*, 265 F.3d at 897 (citing Cal. Gov't Code § 12993(a)). However, allegations outside the scope of the administrative charge are "barred for failure to exhaust." *Id.* An individual who is not named as the offending party but is "described in the body of the complaint as a perpetrator of discriminatory acts is subject to suit under the FEHA." *Clark*, 62 Cal. App. 5th at 306 (citations omitted).

Batiste filed an EEOC charge on August 24, 2015.[6] Admin. Charge at 101. It names the City of Richmond as a respondent and further states:

> My immediate supervisor is Hugo Mendoza. Since the beginning of my employment, I have been subjected to harassment. For example, I have been referred to as 'Memin,' a racist cartoon depicting Black people as monkeys, by colleagues for years. My supervisor has witnessed these incidents but did not take any action.

*Id.* Based on this excerpt, Mendoza argues that Batiste failed to exhaust his administrative remedies as to Mendoza because Batiste did not identify him as someone using the term "Memín," but rather as a witness to harassment who failed to intervene. Mendoza Mot. at 11.

Although the administrative charge might have more explicitly named Mendoza as a respondent, Batiste identified Mendoza by his full name and stated that his "colleagues" referred to him as "Memín" for years, which likely included Mendoza. Admin. Charge at 100-101. The claims in the judicial complaint – that Mendoza and other colleagues called Batiste "Memín" – are thus "like and reasonably related to" the claims Batiste made in the DFEH complaint. *See Clark*, 62 Cal. App. 5th at 301; *see also Martin v. Fisher*, 11 Cal. App. 4th 118, 122 (1992) ("The function of an administrative complaint is to provide the basis for an investigation into an employee's claim of discrimination against an employer, and not to limit access to the courts.").

Accordingly, the Court concludes that the administrative charge put Mendoza on notice that Batiste was complaining about the use of the nickname "Memín" and Mendoza's role as Batiste's supervisor. As such, Batiste has exhausted his administrative remedies against Mendoza.

///

---

[6] The EEOC dual-filed the charge with the DFEH. Admin. Charge at 104.

### b. Unwelcome Conduct

As noted above, the second element of establishing hostile work environment under both Title VII and FEHA is that the defendant's conduct was unwelcome. *See Arizona ex rel. Horne*, 816 F.3d at 1206. Mendoza argues that Batiste cannot claim that the conduct complained of here was unwelcome because he consented to the "mutual banter" that included the use of the nickname "Memín." Mendoza Mot. at 12. Mendoza compares the facts here to those in *Brennan v. Townsend & O'Leary Enterprises, Inc.*, 199 Cal. App. 4th 1336, 1357 (2011), where the plaintiff voluntarily participated in conversations with a supervisor about her personal life and relationships and did not indicate that she found the discussions offensive. Mendoza Mot. at 12.

The record shows that Batiste was unaware of the connotations of the nickname until August of 2015. Batiste Dep. II at 52-53. Nonetheless, Batiste states that he was "devastated" and "humiliated" when he learned that the name referred to a "debasing, demeaning and racist" comic book character. Batiste Decl. ¶¶ 5-6. Distinctly, here, Batiste believed he was joking around with his colleagues, but once he learned the meaning behind the nickname, he was offended and humiliated. *Id.* Mendoza has not proffered any case law supporting his argument that using language a colleague does not understand can result in the colleague finding the language welcomed. Instead, the Court concludes that there is a dispute of material fact as to whether Batiste's humiliation upon learning the meaning behind the nickname can demonstrate that its use was unwelcome. Accordingly, the Court denies Mendoza's motion for summary judgment on this basis.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** the City of Richmond's and Hugo Mendoza's motions for summary judgment. The Court **GRANTS PARTIAL SUMMARY JUDGMENT** as to the allegations and conduct in the post-2015 EEOC charges. The Court **VACATES** the trial date and all related deadlines and hearings and **REFERS** the parties to complete mediation within 60 days from the date of this Order. If the parties wish to be referred to court-sponsored mediation, they shall submit a joint request within three days of this Order. Within two weeks of the completion of mediation, the parties shall **FILE** a joint notice regarding

the mediation and addressing whether and when the Court should set a further case management conference to set a trial date, if needed.

**IT IS SO ORDERED.**

Dated: November 27, 2023

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

14